**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

ROGER DEAN WAGNER,

           Plaintiff,

vs.

MICHAEL J. AS TRUE,
Commissioner of Social Security,

           Defendant.

No. C09-3074-MB

**REPORT AND RECOMMENDATION**

---

## *I. INTRODUCTION*

The plaintiff Roger Dean Wagner seeks judicial review of a decision by an adminis-
trative law judge ("ALJ") denying his application for disability insurance ("DI") benefits
under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* Wagner claims the ALJ
erred in finding (1) he is not disabled under the Listings, (2) his statements concerning his
limitations are not fully credible, and (3) there are jobs in significant numbers in the
national economy that he can perform. (Doc. No. 13)

## *II. PROCEDURAL AND FACTUAL BACKGROUND*

### *A. Procedural Background*

On August 17, 2007, Wagner filed an application for DI benefits alleging he has
been disabled since May 27, 2006. R. 108. His application was denied initially and on
reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on
March 17, 2009. R. 23-66. On May 18, 2009, the ALJ issued her decision, ruling that
Wagner was not disabled and therefore was not entitled to benefits. R. 6-22. On
September 14, 2009, the Appeals Council denied Wagner's request for review (R. 1-3),
making the ALJ's decision the final decision of the Commissioner.

Wagner filed a timely Complaint in this court seeking judicial review of the ALJ's ruling. He claims the ALJ's finding that he is not disabled is not supported by substantial evidence in the record. He asks the court to reverse the ALJ's decision and order the award of benefits.

In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of the case. Wagner filed a brief supporting his claim on April 23, 2010. (Doc. No. 13) The Commissioner filed a responsive brief on June 21, 2010. (Doc. No. 15) The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Wagner's claim for benefits.

The court must decide whether the ALJ applied the correct legal standards, and whether his factual findings are supported by substantial evidence based on a review of the record as a whole. 42 U.S.C. § 405(g); *Page v. AS TRUE*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citations omitted). In this deferential review, the court will consider the record in its entirety to determine whether a reasonable mind would find the evidence adequate to support the Commissioner's conclusion. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citations omitted); *Polk v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

## B. Factual Background

### 1. Introductory facts and Wagner's hearing testimony

Wagner was born in 1955, and was 53 years old at the time of the hearing. R. 30. He was 5'11" and weighed 180 pounds. He graduated from high school in 1973, with C's and B's. R. 31. He has not had any additional education.

Wagner worked for the same employer for thirty years, as a monument setter. R. 146. On May 26, 2006, the Friday before Memorial Day, he was moving a large piece

of granite when it "took [him] down," injuring his lower left back. R. 32. He finished work that day, and returned to work the following week. He worked around the shop throughout that week, but on Monday, June 5, 2006, his back was worse, so on Tuesday, he went to a doctor at a family practice clinic. The doctor restricted his lifting to ten pounds and ordered no stooping, bending, or twisting, and alternate sitting and standing. R. 33.

Wagner participated in physical therapy for about two months, and then returned to work from about July to November, but "didn't do as much." R. 35. The pain in his lower back got worse, extending into his left leg and foot. R. 33-34. He consulted with another doctor, who gave him a lifting restriction of 35 pounds. R. 36. On November 22, 2006, a doctor restricted his lifting to no more than five pounds. R. 36-37. After that, he never returned to work. R. 37. He pursued a worker's compensation claim against his employer, which eventually was settled. The worker's compensation insurance carrier tried to help him find a job, but those efforts were unsuccessful. R. 38.

Wagner is unable to sit for longer than 45 minutes without getting up and changing positions. R. 39. He has to continue to change positions about every 45 minutes. After walking for 45 minutes, he has to sit down for about a half hour before walking again. R. 39-40. He suffers from leg cramps, and can no longer stoop. R. 44-45. He testified he cannot do a job that would require him either to stand or to sit all day. R. 52. He does not feel he can climb a ladder, and does not regularly climb stairs. R. 40-41.

Warner has carpal tunnel syndrome in both arms and hands, and he suffers from acid reflux and irritable bowel syndrome. R. 38. At the time of the ALJ hearing, he was suffering irritable bowel attacks every day. R. 39. His irritable bowel causes diarrhea and nausea. R. 38. He has trouble falling asleep, and he wakes up repeatedly. R. 43-44. He has shoulder pain if he raises his arms. R. 48.

He takes medication for acid reflux, irritable bowel syndrome, and high blood pressure. R. 41-42. Some of his medications cause him to feel dizzy. R. 43.

Wagner is able to dress himself, but has to be careful when he ties his shoes. R. 45. Because of restrictions on his ability to push and pull, he does little of the housework, although he does do some dusting, and he can do dishes for about five minutes at a time. He can take the clothes out of the washing machine and put them in the dryer. R. 46. He also can operate a self-propelled snow blower and a self-propelled lawn mower. R. 46-47. His wife does all the shopping. R. 47. He can drive his truck, but has to take breaks every hour or so. R. 48.

When asked if he could work an eight-hour day for five days a week, Wagner responded, "Probably not." R. 49. He stated that his bowels would flare up, and as a result, he probably would miss a couple of days each week. As to his back, he stated he does not know when it is going to flare up. He stated, "I got a solid pain all the time but minimal." R. 50. He does not take medication for his back, although he does rub "Icy gel" on his lower back every day when he gets out of the shower. R. 50-51.

Wagner's wife, Janelle Wagner, also testified at the ALJ hearing. She and Wagner have been married for twenty-five years. R. 54. She confirmed much of his testimony. She testified he is unable to sit for more than 20 minutes before he has to stand up or switch positions. R. 55. He cannot stand in one place for more than three minutes at a time. His back pain makes it difficult for him to sleep, so he is up and down every night. R. 56. He is unable to do much work around the house, although he can mow the lawn and run the snow blower if he takes a lot of breaks. She testified her husband would not be able to handle a job that required him to work even 20 hours a week. R. 57. She stated he has to be close to a bathroom during the day because of his irritable bowel.

## 2. *Wagner's medical history*

Wagner has a history of irritable bowel syndrome ("IBS") and Barrett's esophagus, an abnormalcy in the tissue lining of the esophagus. R. 250-54. On February 10, 2006, he reported to his doctor that the medication he was taking for his IBS was helping keep the problem under control "most of the time." R. 251.

After Wagner's back injury on May 26, 2006, he first sought treatment on June 6, 2006. He saw Physician's Assistant Linda Bettin at Trinity Corporate Health Services, the company's health care provider, complaining of acute back pain and strain. He told her that while working with a couple of coworkers to set a monument, he felt pain in his lower back radiating to his left buttock. R. 364. He stated he had not felt much pain from the injury until the day before his appointment. He rated the pain at a 9 on a scale of 10. R. 365. X–rays of his back were taken, and his back appeared "essentially normal." Bettin's assessment was "acute lumbar back pain/strain." R. 365. She prescribed Flexeril and a compounded ketoprofen cream. She noted that Wagner needed nonsteroidal anti-inflammatory drugs but could not take them orally because of the Barrett's esophagus. She restricted Wagner lifting to no more than 10 pounds, with no bending or twisting, with frequent positional changes.

Wagner again saw Bettin on June 12, 2006. He reported radiating pain into his left buttock, but otherwise no marked symptoms. R. 366. He had not returned to work because of his work restrictions. He reported that ambulation was difficult. He was feeling better, but he did get some "intermittent discomfort down the right leg." *Id*. He exhibited some restriction as far as bending in flexion. She noted that the x-ray of Wagner's lumbosacral area "was essentially normal." She ordered physical therapy, and continued his work restrictions. Wagner started physical therapy on June 13, 2006. R. 279-80. On June 22, Wagner saw Bettin for a follow-up. He reported his pain had decreased, and he definitely had improved. He had stopped using the anti-inflammatory

medication. When at rest, his pain was at 0 out of 10, but it did worsen throughout the day. R. 367. Bettin ordered continued therapy, with increased weight limits to between 20 and 30 pounds. She recommended that he continue using the anti-inflammatory medication and muscle relaxers.

On July 7, 2006, Wagner saw Bettin for another follow-up. He reported he was using the anti-inflammatory medication and muscle relaxers, and they were helping. R. 368. He stated the pain was like a "migraine headache in his back." Bettin ordered an MRI. The MRI indicated "a shallow disk hernia at L5-S1, predominantly extending into the left lateral spinous recess impinging on a nerve rootlet in this recess." R. 369, 257. On July 14, 2006, Bettin referred Wagner to an orthopedist. R. 370.

On July 21, 2006, Wagner was examined by Dr. David Boarini. R. 260-67. Upon examination, he found Wagner to be normal neurologically. He ordered work hardening for one to two weeks, and then a return to work. R. 449. Wagner completed physical therapy on August 11, 2006. R. 267-78. Wagner's therapist noted that he could lift 45 pounds from floor to waist ten times, 30 pounds from waist to shoulder ten times, and walk up to 20 minutes at a time. R. 268. On August 16, 2006, Dr. Boarini noted Wagner had reported to him that his lower back "feels fairly good now," and released him for work without restrictions. R. 324.

On October 27, 2007, Wagner was evaluated at the request of his worker's compensation provider by Lynn M. Nelson, M.D., an orthopaedic surgeon. R. 377. Wagner reported low back pain to the left buttock, posterior thigh and leg, with numbness, tingling, and cramping. He described the pain as severe and frequent. He reported that the pain increased his irritable bowel syndrome. He stated that ambulation was not significantly limited. He rated the pain at 3 out of 10, and he described his pain as tolerable except with very heavy lifting. R. 373. Dr. Nelson's impression was low back pain, L5-S1 degenerative disk disease, and "very small left L5-S1 disc protrusion." He

advised Wagner that he was not a good surgical candidate. He recommended a functional capacity examination.

Wagner was administered a functional capacity evaluation by Physical Therapist Todd Schemper on November 15, 2006. R. 305-13. The physical assessment was "decreased trunk ROM . . . with difficulty coming out of the flexion and extension positions." R. 307. His coordination and movement characteristics were normal. R. 308. Wagner stated that he had difficulty digging and bending, and lifting and pulling were painful. R. 309. Increased activity bothered his back. He reported pain currently at 3 out of 10, but increasing to 10 out of 10 when at its worst. Schemper determined that Wagner's deficits included "forward bending in standing, kneeling, and ladder climbing," and decreased "lifting, carrying, pushing, and pulling." R. 313. Schemper recommended an eight-hour day, 40 hours per week, at a job in the medium category for material handling, with lifting limited to 40 pounds on an occasional basis.

On November 22, 2006, Wagner saw Mary Shook, M.D. complaining of low back pain radiating down his left leg. R. 296. On physical examination, he had an antalgic gait with toe walking. He was able to forward bend with his fingertips just below the knee. He was extremely limited in his ability to extend because of pain. She recommended lifting of no more than five pounds, no bending or twisting of the back, no stooping or crouching, no pushing or pulling forcefully or repetitively more than 20 pounds, no repetitive activities with either arm, and frequent positional changes. He was given prescriptions for Flexeril and Ecotrin, "hoping that will not exacerbate any pain in his bowels."

Wagner returned to Dr. Nelson on November 28, 2006. R. 379. Dr. Nelson recommended a permanent lifting restriction of 35 pounds, but no other work restrictions. R. 379-80. He found a permanent partial impairment rating of six percent. R. 380.

Wagner saw Dr. Nelson again on April 6, 2007. R. 383-84. Wagner complained of low back pain with burning. The pain radiated to the proximal posterior thigh and left posterior leg. Wagner reported his pain had been slightly better since he had quit work. He also reported that his irritable bowel syndrome was affected by the pain. He rated the pain at 4 out of 10, increasing up to 7 out of 10 at its "most bothersome." On examination, Wagner appeared comfortable and walked well around the room. There was no particular back tenderness, and no evidence of paraspinal spasm. The remainder of the examination was normal. Wagner requested a referral to therapy, and Dr. Nelson made the referral. Wagner went to physical therapy until May 7, 2007 (R. 433-44), when the referral ended. When Wagner was discharged from therapy, he was walking better but his pain had not improved. He could stand for only 10 minutes and sit for up to an hour. R. 444. He reported to his therapist that his back pain was at 3 out of 10.

In a letter dated December 8, 2007, Dr. Nelson gave Wagner a permanent lifting restriction of 35 pounds. R. 451.

The next medical record is a report of an independent medical examination performed by Elizabeth W. Stoebe, D.O., at the request of Wagner's representative. 446-456. The report was dated March 18, 2008. Dr. Stoebe spent one hour with Wagner, and five hours reviewing his medical records and preparing the report. Wagner reported he was taking Nexium, Nortriptyline, and Diovan/HCTZ. R. 453. He had a history of irritable bowel syndrome, Barrett's esophagus, hypertension, gastroesophageal reflux disease, and lower back pain. He had smoked two packs of cigarettes a day for 32 years. His gait was slow. He had tenderness about the lumbar sacral area and palpable muscle spasms to the left of the LS area. R. 454. Dr. Stroebe's diagnosis was LS pain with parathesias and disc protrusion with impingement of left nerve rootlet in lateral recess. R. 455. She assessed Wagner's lumbar impairment at 8%, the impairment from his condition at 1%, and a whole person impairment of 9%.

The next medical record is a report of a Functional Capacity Examination prepared by Brian S. McEvoy, DPT on March 16, 2009, the day before the ALJ hearing.  R. 463-495.  McEvoy determined that Wagner could perform work in the "Light-Medium" classifications.  R. 463.

### 3.  Vocational expert's testimony

The ALJ asked the VE the following hypothetical question:

> [A]ssume that we have a hypothetical individual and this hypothetical individual does have the same vocational profile as the claimant's age, same education, same past work experience.  If this individual is, at least this first hypothetical individual, is exertionally limited in what he can lift and carry.  This first person can lift and carry no more than 20 pounds occasionally, 10 pounds frequently.  This individual can stand and walk up to six hours in an eight hour day.  Sit six hours in an eight hour day.  And his ability to push and pull would be limited to approximately 20 pounds with the upper right extremity and the upper left extremity.  This individual should only occasionally climb, bend, balance, stoop, kneel, crouch, crawl.  This individual should never climb ladders, ropes, or scaffolds.  This individual should be able to change postural position from sitting to standing and walking approximately every 45 minutes.  This individual should work in an environment free of fast paced production requirements. And this individual, besides the normal breaks and lunch periods, would need approximately two unscheduled bathroom breaks each day approximately ten to fifteen, ten to – five to ten minute a piece.  Could this individual perform any of the work that he's performed in the past?

(R. 59-60)  The VE answered "No."  The ALJ then asked if there were any light jobs an individual with these limitations could perform.  The VE responded that the individual could perform several light jobs, including office helper, order clerk, and information clerk.  The ALJ then asked whether the hypothetical individual could perform these jobs

if he did not have the stamina to complete a full eight hour work day, five days a week. The VE responded that he would not be able to keep any of these jobs.  R. 61.

Wagner's attorney asked the VE to make the same assumptions as in the first hypothetical, but also to assume two to three absences a week.  The VE responded that such a person would not be able to hold a full time job.  R. 61.  The attorney then asked the VE to assume the person could lift no more than five pounds.  The VE responded that the person would not be able to perform even sedentary work because that work would require that the person be able to lift up to 10 pounds on an occasional basis.  R. 62.

### 4.    *The ALJ's decision*

The ALJ found that Wagner did not engage in substantial gainful activity from May 27, 2006, the alleged onset date, through the date of her decision, May 18, 2009. R. 11.  She also found that Wagner had the following severe combination of impairments: degenerative disc disease, hypertension, irritable bowel syndrome, and status post bilateral carpal tunnel repair, although she also found that the hypertension and the status post bilateral carpal tunnel repair were, by themselves, nonsevere in nature.  *Id*.  The ALJ concluded that Wagner did not have an impairment or combination of impairments that reached the level of severity contemplated by the Listings.  R. 12.

The ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) involving lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking up to 6 hours in an 8 hour day; sitting 6 hours in an 8 hour day; pushing and pulling up to 20 pounds with the bilateral upper extremities; never climbing ladders, ropes and scaffolds; only occasionally climbing, bending, balancing, stooping, kneeling, crouching, and crawling and changing postural positions from sitting to standing or walking approximately

every 45 minutes. The individual should work in an environment free from fast-paced production requirements. The person, besides normal breaks and lunch periods, would require approximately two unscheduled bathroom breaks each day, approximately five to 10 minutes each time.

R. 12. In making these findings, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." The ALJ stated that she had considered opinion evidence in accordance with the requirements of the applicable federal regulations. R. 12.

The ALJ summarized Wagner's history as follows:

The record reveals the claimant injured his back while performing duties as a monument setter on May 26, 2006. He continued working, but sought medical treatment through Trinity Corporate Health Services on June 6, 2006 due to persistent pain with radiation down the back of his left leg. Although he reported experiencing pain rated as 9 on a scale of 1 to 10 with 10 being the worst after prolonged sitting and upon arising, the claimant stated he did not experience numbness or tingling and had not utilized pain medication. Past medical history indicated diagnoses of irritable bowel syndrome approximately 10 years earlier and Barrett's esophagus in 2002. The claimant reported he had a DOT physical in April 2006 which revealed hypertension. He stated he had been off Diovan for a couple of weeks, but would follow through with his primary care physician. Physical examination revealed normal vital signs, slow gait, tenderness to the lumbosacral area, positive straight leg raising, and limited range of motion. X-ray of the lumbar spine was normal showing only minimal spondylosis. Linda Bettin, PA-C, diagnosed acute lumbar strain and prescribed Flexeril as well as a compounded cream. The physician's assistant provided restrictions of lifting no more than 10 pounds, frequent positional changes, no bending, and no twisting. One week later, the claimant reported feeling somewhat better with the use of Flexeril and cream. The physician's assistant recommended modified duty and initiation of physical therapy.

On June 22, 2006, the claimant reported worsening pain after moving around and related he experienced disturbed sleep. Yet, the claimant admitted he discontinued the anti-inflammatory medication. He also reported he definitely felt he had improved. Physical examination revealed improved ambulation and decreased pain with straight leg raising. On July 7, 2006, the claimant reported pain with sitting and standing and indicated his pain worsened throughout the day. He related he experienced radiation of the pain down the left thigh to the left lateral calf. MRI on July 10, 2006 revealed shallow disc herniation at L5-S1 predominant into the left lateral spinal recess, impinging on a nerve root. When seen by the physician's assistant on July 14, 2006, physical examination revealed some improved ambulation; ability to heel and toe walk with some difficulty; and an ability to knee bend while grasping a table. The physician's assistant recommended referral to an orthopedist at that time. Physical examination on July 24, 2006, by David Boarini, M.D., a neurologist, revealed normal gait, intact strength, symmetrical reflexes, and negative straight leg raising. Dr. Boarini advised the claimant that he was not a surgical candidate and recommended a work hardening program.

Physical therapy progress notes dated July 31, 2006, indicated the claimant lifted 30 pounds in clinic. Consequently, Dr. Boarini recommended return to work with lifting as tolerated. However, a subsequent Work Status statement dated August l7, 2006, indicated the claimant was unable to return to work until completion of the work hardening program. On August 16, 2006, Dr. Boarini noted the claimant had improved with physical therapy. Physical examination revealed normal gait, normal strength, and flexion of the lumbar spine to at least 80 degrees. The neurologist released the claimant to normal work and encouraged smoking cessation as well as exercise.

At the request of a Workers' Compensation provider, the claimant was evaluated by Lynn M. Nelson, M.D., on October 27, 2006. Physical examination revealed a height of 80 inches and weight of 173 pounds; short step gait; decreased

lumbar flexion and extension, but no tenderness or paraspinal spasm; unremarkable sitting straight leg raise and hip rotation; and full lower extremity strength. The claimant indicated the heaviest he had lifted in physical therapy prior to returning to work was 35 pounds. Dr. Nelson explained the claimant was not a surgical candidate due to the predominance of axial rather than radicular pain and lack of significant neurologic impingement, but recommended functional capacity examination.

The claimant underwent functional capacity evaluation on November 13, 2006, showing maximum, consistent effort. The claimant rated his pain as 3 on a scale of 1 to 10 with 10 being the worst and further indicated he experienced level 10 pain at worst. Results indicated the claimant fell within the medium category with ability to horizontally lift 40 pounds on an occasional basis.

The claimant was seen by Mary Shook M.D., a physician associated with Trinity Corporation Health Services on November 22, 2006, for further evaluation. The claimant rated his pain as 7 on a scale of 1 to 10 with 10 being the worst. He denied bowel or bladder changes. Physical examination revealed antalgic gait with toe walking and decreased extension. Dr. Shook restricted the claimant to modified duty including no lifting over 5 pounds, no bending or twisting of the back, no stooping, no crouching, no pushing or pulling forcefully or repetitively of more than 20 pounds, and no repetitive activities with either arm. The physician indicated a need for frequent positional changes.

When seen by Dr. Nelson on November 28, 2006, the claimant reported worsening pain with numbness, tingling, and cramping. After reviewing the functional capacity assessment with the claimant, Dr. Nelson recommended a permanent lifting restriction of 35 pounds. No return follow-up visit was scheduled.

A gap in treatment appeared to occur until April 6, 2007, when the claimant reported burning pain which radiated down the left lower extremity to Dr. Nelson. However, the claimant

conversely related his pain was slightly better after he quit working on November 22, 2007. He stated bending increased his pain. Physical examination revealed no tenderness or paraspinal spasm, negative straight leg raising, and full motor strength. Dr. Nelson observed the claimant ambulated well around the room and recommended return to physical therapy as well as continued home exercise program.

Physical therapy progress notes dated April 30, 2007 indicated the claimant was walking better and able to tolerate sitting in a good chair for a couple of hours. Upon discharge from physical therapy, the claimant related feeling more limber with improved ambulation.

At the request of the claimant's representatives, Elizabeth W. Stoebe, D.O., performed an independent medical evaluation on March 10, 2008. Physical examination revealed slow gait; normal flexion, extension, and rotation of the upper extremities bilaterally; palpable muscle spasms to the left of the lumbosacral area; ability to heel and toe walk; positive straight leg raising on the left; and normal flexion, extension, and rotation of the hips. Diagnoses included lumbosacral pain with paresthesias and disc protrusions with impingement of the left nerve root in lateral recess. Dr. Stoebe recommended referral to a pain clinic for injections.

Another gap in treatment appeared to occur until the claimant underwent functional capacity evaluation by Brian S. McEvoy, DPT, on March 16, 2009. The claimant reported increased pain with lifting, bending, stooping, pushing, and pulling. He stated he was no longer able to push a regular lawn mower. The claimant estimated he sat approximately 5 hours and stood or walked approximately 7 hours during a 24-hour time frame. Physical examination revealed decreased hip flexion and extension; slight tenderness in the lumbosacral area; and positive supine straight leg raising. The physical therapist determined the claimant fell within a light to medium work classification.

R. 13-15 (citations to Exhibits omitted).

The ALJ found that Wagner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. R. 15. The ALJ also found that the testimony of Wagner's wife was not entitled to significant weight "because it was not consistent with the preponderance of the opinions and observations by medical doctors in this case." R. 13.

The ALJ noted that Wagner reported an ability to care for his personal needs, and to "walk around a store with a cart, carry a bag of groceries, walk in his yard, mow with a self-propelled mower, remove snow with a snow blower, drive up to one hour, use a computer, and ride a bicycle two blocks, activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 15. The ALJ pointed out that Wagner initially delayed seeking treatment for his back pain, and that he has not taken any narcotic based pain relieving medications despite allegations of severe pain, which suggested to the ALJ that Wagner's pain might not be as limiting as alleged. R. 15-16. The ALJ did not credit Wagner's claim that the medication had serious side effects. R. 16.

The ALJ found that the "brief, unexplained" statements of Dr. Shook and Ms. Bettin were neither persuasive nor consistent with other substantial evidence of record, and gave them little weight. R. 16. The ALJ gave greater weight to the opinion of Dr. Nelson, finding that it was supported by clinical evidence and was consistent with other substantial evidence in the record. *Id.*

The ALJ found that Wagner could perform a number of jobs existing in significant numbers in the national economy that would be classified as "light work." R. 17. Accordingly, the ALJ held that Wagner was not under a disability within the meaning of the Social Security Act from the date of his alleged disability through the date of her decision, and he therefore was not disabled. R. 9, 17-18.

### III. DISABILITY DETERMINATIONS, THE BURDEN OF PROOF, AND THE SUBSTANTIAL EVIDENCE STANDARD

#### A. Disability Determinations and the Burden of Proof

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *see Kirby v. AS TRUE*, 500 F.3d 705, 707 (8th Cir. 2007); *Hillier v. Social Security Admin.*, 486 F.3d 359, 363 (8th Cir. 2007); *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(I).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon*, 353 F.3d at 605; *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 708 (citing *Bowen v. Yuckert*, 482 U.S. 137, 107 S. Ct. 2287, 98 L.

Ed. 2d 119 (1987); *id.* at 158, 107 S. Ct. at 2300 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a)).

The United States Supreme Court has explained:

> The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." . . . Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting."

*Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). *See Page v. AS TRUE*, 484 F.3d 1040, 1043 (8th Cir. 2007) ("'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work.' *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), *citing Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)."); *accord Kirby, supra*.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520; *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.

20 C.F.R. §§ 404.1520(4)(iv); 404.1545(4); *see Lewis*, 353 F.3d at 645-46 ("RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, 'what the claimant can still do' despite his or her physical or mental limitations.") (citing *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987); 20 C.F.R. § 404.1520(e) (1986)); *Dixon*, *supra*. The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving Residual Functional Capacity Assessments, etc., 68 Fed. Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(4)(v); *Dixon, supra*; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *See Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

### B. *The Substantial Evidence Standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page*, 484 F.3d at 1042 (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Polk v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion.") (quoting *Haggard*, 175 F.3d at 594); *Polk, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the

Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1997)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v.*

*Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v. AS TRUE*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

On the issue of an ALJ's determination that a claimant's subjective complaints lack credibility, the Sixth and Seventh Circuits have held an ALJ's credibility determinations are entitled to considerable weight. *See, e.g., Young v. Secretary of H.H.S.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir. 1987)); *Gooch v. Secretary of H.H.S.,* 833 F.2d 589, 592 (6th Cir. 1987); *Hardaway v. Secretary of H.H.S.,* 823 F.2d 922, 928 (6th Cir. 1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit a claimant's subjective allegations of pain, discomfort, or other disabling limitations simply because there is a lack of objective evidence; instead, the ALJ may only discredit subjective complaints if they are inconsistent with the record as a whole. *See Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). As the court explained in *Polaski v. Heckler:*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1)     the claimant's daily activities;
> 2)     the duration, frequency and intensity of the pain;
> 3)     precipitating and aggravating factors;
> 4)     dosage, effectiveness and side effects of medication;
> 5)     functional restrictions.

739 F.2d 1320, 1322 (8th Cir. 1984); a*ccord Ramirez v. Barnhart*, 292 F.3d 576, 580-81 (8th Cir. 2002). The court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).

## DISCUSSION

Wagner first argues that the ALJ erred in not finding him to be disabled under the Listings. (Doc. No. 13, pp.11-15) He further argues the ALJ improperly discounted his subjective pain complaints. (*Id.*, pp. 15-21) Finally, he argues the ALJ's conclusion that he can perform jobs existing in significant numbers in the national economy is not supported by substantial evidence in the record as a whole because it was based on an inaccurate hypothetical question to the VE. R. 21-23.

### A. The Listings

Wagner argues the ALJ erred in not making a detailed evaluation of his condition under the Listings at 20 C.F.R., Part 404, Sub-Part P, Appendix 1, Section 1.04(a), which provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or

C. Lumbar spinal stenosis resulting in pseudo-claudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ said the following about the Listings:

The undersigned has considered all of the Claimant's impairments individually and in combination but can find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings. Since the claimant shows no evidence of an impairment which meets or equals the criteria of a listed impairment or of a combination of impairments equivalent in severity to a listed impairment, disability cannot be established on the medical facts alone.

R. 12. In step three of the five-step sequential evaluation process, the ALJ was to determine whether Wagner's impairments matched, or were equivalent to, one of the listed impairments. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 119 (8th Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)). If the impairment was equivalent to a listed impairment, then Warner was *per se* disabled, and no further analysis was necessary. *Id.*, 220 F.3d at 119.

Wagner argues the ALJ "didn't even give a cursory look at the listing. She simply made summary conclusions that Wagner was not disabled because he did not meet the listings." (Doc. No. 13, P. 12) Wagner argues the ALJ was required to set forth her reasons for concluding the Listings did not apply and did not do so, and therefore that her decision should be overruled. *See Burnett*, 220 F.3d at 120 ("Because we have no way to review the ALJ's hopelessly inadequate step three ruling, we will vacate and remand the case for a discussion of the evidence and an explanation of reasoning supporting a determination that Burnett's 'severe' impairment does not meet or is not equivalent to a listed impairment."). The Commissioner responds that the holding in *Burnett* is contrary

to the law in the Eighth Circuit, and the ALJ's decision should not be overruled on this basis. *See Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion, as it does in this case."); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

The ALJ failed to conduct a proper analysis of the applicability of the Listings in this case, but the Commissioner is correct this failure does not require the court to set aside the ALJ's ruling  Instead, the court must conduct its own analysis of the record to see if it contains substantial evidence to support the ALJ's finding that the Listings do not apply. *See Pepper*, 342 F.3d at 855-56. The claimant has the burden of proof at step three of the sequential evaluation process to show all of the criteria in a Listing. *See Marciniak v. Shalala*, 49 F.3d 1350, 1353 (8th Cir.1995) (claimant must meet all the criteria in a listing).

To fall under Listing 1.04(a), the claimant must show that he suffers from a disorder of the spine resulting in compromise of a nerve root or the spinal cord. Wagner argues that the MRI of July 10, 2006, showing "a shallow disk hernia at L5-S1, predominantly extending into the left lateral spinous recess impinging on a nerve rootlet in this recess" (R. 369, 257), satisfies this requirement. (Doc. No. 13, p. 12.) The Commissioner responds that impingement of a nerve rootlet is not the same as compromise of a nerve root, citing Dr. Nelson's opinion that Wagner's bulging disc does not "significantly displace" the nerve root. (Doc. No. 15, P. 11) The Commissioner's argument simply makes no sense. The record evidence establishes that this requirement of the listing is satisfied.

The Listing also requires the claimant to show one of three other things: (A) neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, positive straight-leg raising test (sitting and supine); (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

The court is unable to ascertain on this record whether Wagner has met the requirements of the Listing. The ALJ's ruling does not address these questions at all. The case should be remanded to the Social Security Administration to further develop the record, if necessary, and to fully address this issue it its ruling. *See Senne*, 198 F.3d at 1068.

## B. *Wagner's Subjective Pain Complaints*

Wagner disputes the ALJ's finding that his subjective pain complaints were not credible. (Doc. No. 13, p. 15) The Commissioner responds that the ALJ properly evaluated Wagner's claims, and her credibility determination should not be disturbed. (Doc. No. 15, p. 14.)

The ALJ concluded that Wagner's daily activities were inconsistent with his claimed disability. The record supports this conclusion. Wagner's daily activities go beyond light housework and minimal routine daily activities. *See Draper v. Barnhart*, 425 F.3d 1127, 1130-31 (8th Cir. 2005). The ALJ also relied on the fact that Wagner declined to take strong pain relievers for his back pain, and has been inconsistent in the use of his

medication. This conclusion is supported by the record. The record also supports the ALJ's conclusion that Wagner's testimony concerning the disabling nature of his pain was inconsistent with the findings of many of the doctors who treated Wagner, including Drs. Boarini, Nelson, and Stoebe, as well as the findings in two FCEs.

The record supports the ALJ's conclusion that Wagner's back injury, and the pain associated with it, does not prevent him from work. However, the record is not clear on the question of whether, and if so to what extent, Wagner's gastrointestinal problems affect his ability to work. Wagner testified that his bowel problems and other gastric issues would result in his missing work on a regular basis, a work restriction the VE testified would preclude all full-time employment. However, except for Wagner's own subjective complaints to his medical care providers and during his hearing testimony, the record is devoid of evidence on this question.

On remand, the medical evidence on this issue should be fully developed, and the issue should be addressed.

### C. Hypothetical Question

Wagner argues the ALJ's hypothetical question to the VE was not supported by the record. (Doc. No. 13, p. 21.) The Commissioner disagrees. (Doc. No. 14, p. 18.)

A hypothetical question is "sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *House v. Shalala*, 34 F.3d 691, 694 (8th Cir. 1994). Only the impairments substantially supported by the record as a whole must be included in the ALJ's hypothetical. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993)). Here, the ALJ's hypothetical question included all of the impairments she found to be credible, and therefore it was appropriate on the current record. However,

any hypothetical questions to the VE on remand will have to be modified to account for any impairments arising out of Wagner's gastrointestinal issues.

## *IV.  CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[*] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within fourteen (14) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed and this case be remanded for further development of the record and other proceedings consistent with the above opinion.

**IT IS SO ORDERED.**

**DATED** this 26th day of January, 2011.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[*]Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.